COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

**Paul B. ROSENE, Respondent.**

No. 87–714.

Supreme Court of Iowa.

Sept. 23, 1987.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., and Norman G. Bastemeyer, Des Moines, for complainant.

Paul B. Rosene, Sioux City, pro se.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ, and LAVORATO, JJ.

LAVORATO, Justice.

This matter is before us on review of the decision of the Grievance Commission pursuant to Iowa Supreme Court Rule 118.10. The complainant, the Committee on Professional Ethics and Conduct, filed a complaint charging that the respondent, Paul B. Rosene, violated the Iowa Code of Professional Responsibility for Lawyers because he was dilatory in the handling of two estates, and he failed to cooperate with the committee when it investigated these matters.

Following a hearing at which Rosene appeared pro se and testified, the commission found that a convincing preponderance of the evidence established Rosene violated Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(1) (violating a disciplinary rule), (A)(6) (engaging in conduct adversely reflecting on a lawyer's fitness to practice law); DR 6–101(A)(3) (neglecting a legal matter entrusted to lawyers); DR 7–101(A)(2) (failing to carry out contract of employment entered into with client for professional services); EC 1–5 (failing to maintain high standards of pro-

fessional conduct); and EC 6–4 (failing to adequately prepare for and appropriately attend to legal work).

The commission recommended Rosene's license to practice law be suspended for three months. Upon our de novo review, *see* Iowa Sup.Ct.R. 118.10, we agree with the commission that Rosene was guilty of these ethical violations and with its recommendation. We suspend Rosene's license to practice law indefinitely with no possibility of reinstatement for three months from the date of the filing of this opinion.

At all times material to the complaint, Rosene was in the general practice of law in Sioux City, Iowa. Approximately five percent of his practice was devoted to probate. The complaint involved the Helen E. Crowther estate and the Lois V. Junck estate. Both estates were relatively small and involved no real estate. The executor in each estate was the sole beneficiary.

Rosene opened the Crowther estate in December 1981, and the Junck estate in February 1982. An inheritance tax release was filed in the Crowther estate in May 1982, and in the Junck estate in August 1982.

Nothing occurred in either estate until May 1985 when Rosene received notices of delinquencies from the clerk of the district court concerning both estates. *See* Iowa Code § 633.32(1). The delinquencies in both estates were identical: Rosene failed to obtain an income tax release in each estate and failed to close the estates within the time allowed by law.[1]

Because of Rosene's failure to cure the delinquencies in both estates within sixty days, the clerk, in July 1985, reported the delinquencies as required by Iowa Code section 633.32(2) and rule 5 of the Iowa Rules of Probate Procedure to the presiding judge and ultimately to the Committee on Professional Ethics and Conduct.

The following October, Rosene received a letter from the committee about the delinquencies concerning both estates. The letter stated in part:

> You may consider this letter as notice of a complaint against you filed by the committee. Under the Rules of Procedure of this committee, an investigation will be made and the matter will come on for hearing at a future meeting of the committee.
>
> In the meantime, you are requested to furnish the committee with a statement responsive to the complaint.... Please see Rule 3.3 of the enclosed Rules of Procedure of the committee.

According to rule 3.3, failure on the part of the attorney to respond to the committee's investigative requests may trigger the filing of a complaint against the attorney with the commission "for failure to respond and concerning all or any portion of the matter about which the original complaint was made."

In the meantime, because Rosene failed to cure the delinquencies, the clerk served him with a second notice of delinquency relative to both estates on November 1, 1985. Several weeks later Rosene answered the committee's October letter and advised the committee that he had filed final income tax returns in both estates and both would be closed upon his receipt of income tax clearances. He also assured the committee that he would notify it when the estates were closed. Rosene did file the tax clearances in both estates on December 31, 1985, and a final report in the Junck estate on the same date, but failed to close either estate immediately as he had assured the committee.

The following January, the clerk reported neither estate had been closed and both remained delinquent. The clerk's action triggered a letter from the committee to Rosene regarding these delinquencies and requesting a report of the current status of each estate. Rosene did not respond.

---

**1.** Iowa Code section 633.473 (1985) requires an estate to be closed within three years after the second publication of notice to creditors. Of course, the district court cannot approve the final report of the executor and close the estate unless the report shows, and the court finds, that all income taxes have been paid or secured by bond, deposit, or otherwise. *See* Iowa Code §§ 421.27, 633.477.

Several months later, Rosene received a second letter from the committee again advising him that a complaint could be filed with the Grievance Commission based upon a failure to respond pursuant to rule 3.3 of the commission's rules of procedure. The letter recited the rule verbatim. Again, Rosene did not respond.

In May 1986, Rosene received a third notice of delinquency resulting from his continued failure to close both estates. Because Rosene failed to take any action within sixty days of the notice, the clerk again reported the delinquencies in both estates.

On August 18, 1986, the committee reprimanded Rosene by letter for his conduct "in failing to make timely filings in probate matters, [in] failing to remove delinquencies after receiving notice thereof, and [in] fail[ing] to respond to notice of complaint."[2] The letter directed Rosene to cure the delinquencies in both estates and submit written proof that he had done so within sixty days. The letter admonished Rosene that if he failed to comply with the committee's direction, it would have no alternative but to file a complaint with the Grievance Commission. In typical fashion Rosene did neither.

On November 1, 1986, Rosene received a fourth notice of delinquency regarding the Crowther estate. Although Rosene was also delinquent in the Junck estate on this date, the record does not reflect that the clerk notified Rosene of this delinquency. The clerk reported the delinquency in the Crowther estate on January 1, 1987. About one week later, Rosene finally closed the Crowther estate. The committee filed the present complaint against Rosene on January 27, 1987. Approximately one month later, he closed the Junck Estate.

Rosene admitted receiving the letters from the committee as well as meeting with a district court judge about clearing up the delinquencies. When asked about his inertia by one of the commissioners, Rosene responded:

Doing something else I guess. I know I haven't got anything to say that will satisfy you, Mr. Forsyth. I know that. And I'm not being smart-alecky either. I'm just saying—no, I can't—I was just doing something else I guess.

Like I put in my answer there I have a tendency I think to slough off bad news. When I got that—I know when I got that one letter from the committee, I think is the one—that admonishment or whatever it's called, I think that's what it's called, why, that scared the living daylights out of me.

And I don't even think I read the whole thing through. I know I didn't. I saw what it was and I read a little bit of it and put it down. I don't think I've ever read the whole thing through.

I don't know how to explain that other than I just have an aversion to bad news I guess. I've had enough of it in my life that I'm scared of it I guess. I don't know. That's not an explanation, I realize that.

But I guess you asked me how come I didn't pay attention to those things. At one point there they really crept up on me, one point I realized that I was in serious trouble there on those things. By that time I guess it was probably too late time-wise to pull out of it.

A convincing preponderance of the evidence supports the commission's findings that Rosene violated DR 1–102(A)(1), (A)(6), DR 6–101(A)(3), DR 7–101(A)(2), EC 1–5, and EC 6–4. He failed to close the estate within the time required by section 633.473. The circumstances surrounding such failure in both estates easily demonstrate neglect within the meaning of DR 6–101(A)(3) and EC 6–4. *See Committee on Professional Ethics & Conduct v. Paulos*, 410 N.W.2d 260, 262 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Larsen*, 407 N.W.2d 601, 602 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Burrows*, 402 N.W.2d 749, 751–52 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Megan*, 402 N.W.2d

---

**2.** On October 10, 1986, pursuant to Iowa Supreme Court Rule 118.3, we ordered the reprimand to be spread upon the records of this court as a public document.

432, 433 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Batschelet*, 402 N.W.2d 429, 431 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Stienstra*, 395 N.W.2d 638, 639–40 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Free*, 394 N.W.2d 373, 374 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Bromwell*, 389 N.W.2d 854, 856–57 (Iowa 1986).

As was the situation in all of the above cited cases, Rosene's failure to close the estates in a timely manner was magnified by his repeated disregard of delinquency notices from the clerk. In discussing DR 6–101(A)(3), we have said that "[r]easonable adherence to the rule should also involve positive response to the prodding of the district court and its personnel." *Burrows*, 402 N.W.2d at 751 (quoting *Committee on Professional Ethics & Conduct v. Bitter*, 279 N.W.2d 521, 524 (Iowa 1979)). Moreover, we have also held that such dilatory conduct violates DR 1–102(A)(1) and (A)(6), *see Burrows*, 402 N.W.2d at 752, as well as DR 6–101 (A)(3), *see Bromwell*, 389 N.W.2d at 857; DR 7–101(A)(2), *see Batschelet*, 402 N.W.2d at 431; EC 1–5, *see Batschelet*, 402 N.W.2d at 431; and EC 6–4, *see Free*, 394 N.W.2d at 374.

Rosene's failure to respond to the committee's notices and investigative requests constituted, as the commission found, separate violations of DR 1–102(A)(1), DR 1–102(A)(6), and EC 1–5. *See Committee on Professional Ethics & Conduct v. Piazza*, 405 N.W.2d 820, 823 (Iowa 1987).

These ethical violations, we conclude, warrant a suspension of Rosene's license to practice law. In imposing discipline, we consider that Rosene has been previously reprimanded. *See Burrows*, 402 N.W.2d at 752; *Stienstra*, 395 N.W.2d at 640. We suspend Rosene's license to practice law indefinitely with no possibility of reinstatement for three months from the date of the filing of this opinion.

This suspension shall apply to all facets of the practice of law, *see* Iowa Sup.Ct.R. 118.12, and any application for reinstatement shall be governed by court rule 118.-13, which provides:

An application for reinstatement from any suspension shall be filed with the clerk of this court not more than sixty days prior to expiration of such suspension or time fixed for making application therefor in accordance with the provisions of court rule 117. In addition thereto the applicant shall state, in said application, that he or she has complied in all respects with the orders and judgments of this court relating to the suspension. The applicant shall also submit to this court satisfactory proof that he or she, at time of the application, is of good moral character and in all respects worthy of the right to practice law.

In any such application for reinstatement, Rosene shall also submit satisfactory evidence that he will put in place, use, and maintain office practices that will assist him in performing future work in a timely manner. Costs are assessed to Rosene pursuant to Iowa Supreme Court Rule 118.-22.

LICENSE SUSPENDED.